FILED

05/26/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0244

DA 19-0244

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 135N

IN RE THE MARRIAGE OF:

ANNIE NIQUET,

      Petitioner and Appellant,

  and

EMIGDIO GONZALEZ-NIQUET,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                In and For the County of Lake, Cause No. DR-16-74
                Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tracy Labin Rhodes, Labin Rhodes Law, PLLC, Missoula, Montana

      For Appellee:

          Emigdio Gonzalez-Niquet, Self-Represented, Newton, Massachusetts

Submitted on Briefs:  February 25, 2020

Decided:  May 26, 2020

Filed:

_____
                   Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Annie Niquet (Mother), appeals the March 21, 2019 Findings of Fact, Conclusions of Law, and Order, entered in the Twentieth Judicial District Court, Lake County, amending her parenting plan. Mother and Emigdio Gonzalez-Niquet (Father) are the parents of Z.N., who was age 4 at the time of the proceedings. We affirm.

¶3 On December 5, 2016, the parties' marriage was dissolved and the District Court approved the proposed parenting plan (Parenting Plan) regarding Z.N. At the time of dissolution, Z.N. was 22 months of age. Mother had recently relocated to St. Ignatius, Montana, to be near family, while Father continued to reside in Newton, Massachusetts. The Parenting Plan provided that Z.N. would reside primarily with Mother and, for six months, Father would have supervised visits with Z.N. for three consecutive days each month. After six months, Father's visits would be unsupervised unless, following a motion and hearing, the court deemed continued supervision necessary.

¶4 Father approved of Mother's relocation to Montana from Massachusetts because he was still hoping to save the marriage. However, following the hearing in District Court dissolving the parties' marriage, Mother relocated with Z.N. to Draper, Utah, and

the District Court determined Mother had relocated without providing notice to the court or Father. Thereafter, Father was unable to exercise most of his visitation with Z.N. as outlined in the Parenting Plan, which was to occur in Montana, for reasons the District Court attributed to Mother.

¶5 On May 22, 2017, Mother filed a petition to amend the Parenting Plan. In response, on July 10, 2017, Father filed a contempt petition alleging Mother's failure to follow the Parenting Plan. On September 27, 2017, the District Court entered an order indicating that no further action, including ruling on the parties' petitions, would be taken by the court until the parties participated in mediation. Six months later, on March 30, 2018, Mother commenced a proceeding in Utah alleging Father had poisoned Z.N. and herself. The proceeding in Utah Family Court was ultimately dismissed after the investigation revealed Father was not present in Utah when Mother and Z.N. were allegedly poisoned.

¶6 On July 23, 2018, Father filed a renewed petition for contempt and request for change in custody. Father alleged that his visitation rights were being continually frustrated by Mother and that Mother was mentally unfit to care for Z.N. The District Court set a show cause hearing on Father's contempt petition for September 12, 2018. Father appeared by Polycom from Massachusetts, but Mother did not appear. The court concluded that Mother had been properly notified of the hearing; held Mother in contempt; required the parties to mediate their dispute; and scheduled a visitation for Father with Z.N. following the October 4, 2018 scheduled meditation.

¶7 The District Court scheduled a hearing for October 31, 2018, to address Father's request to change the Parenting Plan. Father, representing himself, wanted Mother to receive mental health treatment and to have her custodial care of Z.N. monitored or supervised. Father represented Mother was unfit to care for Z.N. until she received help. Alternatively, Father asked to be the primary caregiver for Z.N. Mother, appearing with then-recently-retained counsel, requested that a guardian ad litem (GAL) be appointed to investigate and make recommendations as to the best interests of Z.N. The District Court appointed a GAL agreeable to both parents and rescheduled the hearing on Father's request to change the Parenting Plan for March 18, 2019.

¶8 Mother appeared at the March hearing with new counsel, who requested a continuance because she had just been retained. However, the District Court denied the continuance, noting that Father had purchased an airline ticket and was present and ready to proceed with the hearing. The court expressly noted the severity of the allegations and its concern for Z.N.'s welfare. After conducting the hearing, the District Court concluded Mother had frustrated Father's attempts to visit and have a relationship with Z.N. and that Z.N., because of Mother's mental health issues, would not be safe if left in Mother's care.

¶9 We review the underlying findings of fact in support of a district court's decision regarding amendment of a parenting plan under the clearly erroneous standard. *In re G.M.N.*, 2019 MT 18, ¶ 10, 394 Mont. 112, 433 P.3d 715. We review a district court's conclusions of law to determine if they are correct. *In re G.M.N.*, ¶ 10. Absent clearly erroneous findings, we will not disturb a district court's decision regarding a parenting plan unless there is a clear abuse of discretion. *In re G.M.N.*, ¶ 11.

4

¶10   The District Court had the difficult and unenviable job of conducting a contested hearing after it had been barraged by pleadings filed by both parents, with or without counsel's approval, and where one party was not represented. Repeatedly, the District Court encouraged Father to obtain counsel and advised Mother of the gravity of the situation. By the time of the March 2019 hearing, the matter had been pending for over three years, and the District Court had safety concerns for Z.N. On appeal, Mother maintains that the District Court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Title 40, chapter 7, MCA; that the court abused its discretion in denying Mother's request for continuance; and that the court abused its discretion in amending the Parenting Plan. We address each in turn.

¶11   Mother does not contest that the District Court had jurisdiction to enter the Parenting Plan in 2016; rather, Mother asserts that because neither parent lived in Montana at the time of the hearing in March 2019, the court lacked "continuing jurisdiction" to amend the Parenting Plan. The UCCJEA specifically provides that "a court of this state that has made a child custody determination . . . has exclusive, continuing jurisdiction over the determination until: . . . (b) a court of this state or a court of another state determines that neither the child, a parent, nor any person acting as a parent presently resides in this state." Section 40-7-202(1)(b), MCA. Here, the District Court was asked to continue enforcement of the Parenting Plan, approved by a Montana court, and enforce Father's visitation with Z.N. in Montana. The District Court also concluded that Mother had left Montana without providing notice to either the court or Father. Mother originally moved to Montana because her family lived here and would be

available to assist with Z.N.'s care. Finally, the District Court expressly declared its intent to decide Z.N.'s welfare because of the grave allegations being made by Mother against Father. The District Court, a "court of this state," never made a "determination" that the child, parent, or other person acting as a parent did not reside in Montana. Neither did a court of another state so determine. Under these facts, we conclude that the District Court had continued jurisdiction to decide who would be Z.N.'s primary caregiver.

¶12 Mother's claim that the District Court abused its discretion in denying her request for a continuance is easily addressed. While Mother's counsel may have recently entered their appearance in the case, the District Court considered that Father had purchased airline tickets and was present and ready to proceed with the hearing. Further, Father's visitation was being actively frustrated by Mother and the District Court determined there were serious safety concerns for Z.N., which necessitated the court's decision as to where Z.N. would reside. Having reviewed the record, we conclude the District Court did not abuse its discretion in denying Mother's request for continuance.

¶13 Mother also alleges that the District Court abused its discretion when it amended the Parenting Plan to make Father the primary custodial parent. We disagree. The District Court found that Mother had serious mental health issues which caused her to report to Massachusetts's child protective services in 2015 that Father had poisoned Z.N. and Mother. The alleged abuse was investigated and found to be unsubstantiated. However, as a result of the investigation, Mother was admitted to the psychiatric unit of a hospital for a period of days and evaluated. The protective service agency further

concluded Father was a safe, suitable parent for Z.N., but without psychiatric treatment, Mother was not.

¶14 The District Court also concluded that Mother had failed to notify the court or Father of her and Z.N.'s whereabouts and continued to frustrate Father's attempts to visit Z.N. While Father's petition for contempt was pending in the fall of 2018, Mother again, "under bizarre circumstances," caused Father to be investigated for allegedly drugging Z.N. with benzene phenol, a dangerous chemical. Following an investigation, the allegations were determined to be unfounded and again the child protective services agency, this time in Utah, expressed concerns about Mother's psychological condition and ability to safely meet Z.N.'s needs.

¶15 Mother again made allegations in February of 2019, one month prior to the hearing to amend the Parenting Plan, that Father attempted to poison Z.N. This report was also investigated and found to be unsubstantiated.

¶16 Finally, there was testimony that Mother hired an immigration attorney in December 2016 to pursue deportation of Father to Mexico. Father had to answer to these allegations and the matter was ultimately dismissed. Additionally, Mother made unsubstantiated allegations of sexual abuse of Z.N. by Father and, after Z.N. would visit with Father, Mother would take Z.N. to a hospital emergency room for an examination.

¶17 The District Court found that Father incurred considerable expense to maintain contact with Z.N., flying to Utah from Massachusetts in November 2018, December 2018, and January 2019, in addition to other trips by air and vehicle. Father worked extra jobs, in addition to his accounting work, to be able to cover these transportation costs.

¶18 The District Court found specifically that Mother's testimony was not credible, and that Father's was. The court addressed each of the factors identified in § 40-4-212, MCA, and determined that it was in Z.N.'s best interests to have her primary residence with Father.

¶19 Upon careful review of the record and the District Court's findings of fact and conclusions of law, we determine there were no findings of fact that were clearly erroneous; nor were there incorrect conclusions of law. The court did not abuse its discretion in amending the Parenting Plan and its decision is affirmed.

¶20 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE